[Civ. No. 7259. Second Appellate District, Division Two.—December 22, 1932.]

O. C. BECK, Respondent, v. MYRTLE I. HOAGLAND, Appellant.

Milton M. Cohen and Jerome H. Kann for Appellant.

Cantillon & Sievers for Respondent.

STEPHENS, J., *pro tem.*—Respondent was awarded a judgment for the sum of $2,000 upon a complaint alleging fraud against appellant and asking for a judgment of $4,000 as damages. The answer denies the existence of any fraud or misrepresentation and sets up as a second defense that the complaint does not state facts sufficient to constitute a cause of action and a third defense that the action is barred by the statute of limitations. The appellant here was the defendant below.

Practically all, if not all, of the persons concerned in the controversy were interested in spiritualism and either belonged to or attended the same church. Appellant was a medium and the pastor of the flock. A Dr. Coolidge was promoting an automatic automobile gear shift, and appellant was interested with him. Appellant advised respondent to invest money in the project through the direction, as she claimed and as respondent believed, of a spirit guide. She also expressed the view as her own opinion that the invention was meritorious and would be a great success. There is no doubt but that respondent put great credence in the honesty and integrity of appellant personally and in the genuineness of the spirit messages said to have been spoken through her. Dr. Coolidge also spoke of the invention in glowing terms, and on the twelfth day of January, 1923, respondent paid Dr. Coolidge $4,000 for an interest therein.

The government had issued patents upon the invention, and there is evidence that engineers and mechanics had approved the principles thereof. Some time in 1923 it was evident to all closely associated in the enterprise that the invention was not as perfect as it had been represented to be and would not fit all cars except Fords, as it had been represented it would do. In fact the apparatus as it was then planned was impractical. Two engineers were engaged to work upon the problem and they made improvements and these were patented. In July of 1923 these engineers were at respondent's home and communicated to him the fact that the original device was not capable of doing what it had been represented to him as being capable of doing.

The situation was such that respondent either should have known the frailties and faults of the device or was put upon his inquiry regarding them. It is certain that he then knew that the possibilities of the device were far less than they had been represented to him as being. (*Smith* v. *Martin,* 125 Cal. 247 [67 Pac. 779]; *Simpson* v. *Dalziel,* [confidential relation case] 135 Cal. 599 [67 Pac. 1080].) It was about this time that respondent ceased attendance of the church meetings.

The improved apparatus was very different from the original and much more practical. It was put on several cars and proved something of a mechanical success. Respondent co-operated in these actions and entered into a contract with Dr. Coolidge and another person as of the 16th of August, 1923, to manufacture the apparatus for seventy-five per cent of the return from the enterprise. Dissension arose among those interested; there were lawsuits and hearings before the corporation commissioner and delay followed delay. The internal affairs of the entity composed chiefly of the congregation of the church were unsettled, and finally in November of 1927 respondent, so he alleges, discovered that he had been defrauded by appellant. The event that brought this discovery about, he testifies, was that the appellant expressed a wish that the affairs of the church should be kept out of the investigation before the corporation commissioner; also that appellant had failed to testify before the commissioner. It is undisputed that up to the filing of the instant case no return from investment had ever been made to respondent or anyone either in profit or in principal. Up to that time the enterprise had been a financial failure. The full $4,000 invested by respondent was placed to the use he expected it to be put, to wit, the purchase of additional interests in the original patents. There is no contention that either Dr. Coolidge or appellant ever got a dollar of it. Respondent also made it a condition of the investment that he should be one of the governing board handling the affairs of the enterprise and that but one of any family should be on such board. The latter requirement had been violated long before respondent claimed the discovery of the fraud. There is no claim in the case that anybody connected with the affairs of the enterprise, except the engineers employed long after the investment of respond-

ent, had any special or accurate knowledge of mechanics or of gear shifts. Respondent was a chemist and a graduate of Columbia University.

We think the evidence upon which the trial judge made the finding of fraud in this case is very unsatisfactory, but however that may be, we think the judgment must be reversed for other reasons. Every representation made by appellant either in her capacity as a medium or personally, that respondent here complains of, was revealed to him as faulty when the engineers reported the necessity of improvement. He knew that the success that had been pictured to him as certain to follow the introduction of the originally planned apparatus could never be attained. Notwithstanding he made no complaint but continued in the active affairs of the concern and even went further to contract a different interest in the improved and greatly changed apparatus. If he ever had a good cause of action for misrepresentation or fraud, it accrued as of the date of his knowledge that the original inventions were not what they had been represented to be. As such knowledge was acquired in July, 1923, and the complaint was not filed until May, 1928, the statute of limitations had run against the action. (Sec. 338, subd. 4, Code Civ. Proc.) We also think that the complaint is fatally defective in that it does not attempt to allege either of the three requirements to a complaint sounding in fraud, that are so clearly set out in *Gray* v. *Yarbrough*, 61 Cal. App. 724, at page 732 [215 Pac. 914, 917], as follows: " 'Where an action for relief on the ground of fraud is brought after the expiration of the statutory period of three years, the complaint must show (1) when the fraud was discovered, which, of course, must be within the three-year period; (2) why it was not discovered sooner, and (3) the circumstance under which it was discovered.' (*Victor Oil Co.* v. *Drum*, 184 Cal. 225, 241 [193 Pac. 243, 249])." (See, also, *Lady Washington C. Co.* v. *Wood*, 113 Cal. 482 [45 Pac. 809], and *Original Mining & Milling Co.* v. *Casad*, 210 Cal. 71 [290 Pac. 456].)

The judgment is reversed, and the lower court is instructed to enter judgment for the defendant.

Works, P. J., and Thompson (Ira F.), J., concurred.